UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| BIDDEFORD INTERNET CORPORATION )<br>D/B/A GREAT WORKS INTERNET )<br>and GWI VERMONT, LLC, )<br>)<br>Plaintiffs, )<br>)<br>EAST CENTRAL VERMONT )<br>TELECOMMUNICATIONS DISTRICT, )<br>VERMONT ISP OPERATING COMPANY )<br>COREY KLINCK, )<br>ANDREW OBERHOLZER, and )<br>DOES 1-10 )<br>)<br>Defendants. )<br>) | Docket No. 25-cv-745 |

### EAST CENTRAL VERMONT TELECOMMUNICATIONS DISTRICT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendant East Central Vermont Telecommunications District ("District"), by and through its attorneys, Primmer Piper Eggleston & Cramer P.C. opposes Plaintiffs and Counterclaim-Defendants Biddeford Internet Corporation d/b/a Great Works Internet and GWI Vermont, LLC (collectively, "GWI") Motion for an Expedited Hearing and for a Preliminary Injunction (the "Motion") (ECF No. 3) as follows:

### INTRODUCTION AND FACTS

GWI's Motion shows a continued indifference to evidence, offering none in the hopes that rhetoric, characterization, and storytelling will sway the Court instead of proof. GWI does not even include a copy of Mr. Oberholzer's alleged non-compete agreement, yet asks the Court to enforce it. As the District Court stated in a not dissimilar business non-compete case prosecuted by GWI's counsel, "[Plaintiff's civil conspiracy allegations] all suffer from the same defect—they rely on speculation and conjecture. A court has 'no obligation to entertain pure speculation and conjecture.'"

1

*Blackberry Corp. & Cylance Inc. v. Coulter*, No. 5:22-CV-98, 2023 WL 5301958, at *7 (D. Vt. Aug. 1, 2023) (Crawford, C.J.) (citing *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (dismissing civil conspiracy count based on allegations found "frivolous" by the district court and court of appeals)). The assertion by GWI, upon which it rests its arguments, that "ECFiber and VISPO are actively raiding GWI's workforce and will continue to do so unless [the] Court intervenes" is brazen, unsupported, and meritless. The lack of factual support offering any basis for the relief requested by GWI is fatal to its Motion.

## I.     GWI's motion is not supported by evidence.

GWI repeatedly claims without evidence that East Central Vermont Telecommunications District and VISPO personnel have knowingly "solicited," "recruited," or "poached" former employees of GWI and will do so in the future if not enjoined. (Mot. at 3, 6, 10, 11, 14). GWI represents that this bare allegation, imagined to occur into the future, is one of the essential bases for the relief it seeks in the Motion. (Mot. at 6, 12). Making this claim without evidence as part of what GWI knows is a serious request, reflecting "an extraordinary remedy never awarded as of right," is stunning, and GWI's Motion should be denied. *JTX Tax, LLC v. Agnant*, 62 F.4th 658, 666–67 (2d Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

Indeed, the only evidence GWI has attempted to offer is excerpted hearing testimony attached to GWI's Motion which contains only, at best, second-hand information from a representative of the District that there may be some GWI employees who have decided they would rather leave GWI and work at VISPO, and testimony by Mr. Oberholzer that he accepted a job at VISPO starting at some point in the future. *See* (Exhibit 1 to GWI's Motion, ECF No. 3-1). The allegations in GWI's Verified Complaint—the remaining body of "evidence" offered in support of its Motion—are deeply

problematic. Many ostensibly verified allegations appear to be impossible to have been made on personal knowledge, or with any knowledge of any kind as to their truth, but rather upon conjecture.[1]

Additionally, nowhere does GWI attempt to advance evidence that the District or VISPO had actual knowledge of the contents of any agreement purporting to affect the employees GWI claims—once again, without evidence—are being targeted, "recruited," or "poached." GWI provides only speculation and conjecture. GWI never actually provided the District and VISPO the non-competes it allegedly holds over the heads of the ECFiber Staff, or even identified particular staff members subject to non-competes.[2] Instead, GWI elected to wait until VISPO made hires to sue yet again and to disclose just one copy of one non-compete. The District in fact *asked* for a simple list of GWI employees covered by a non-compete at the August 28, 2025 mediation, which GWI declined to provide at mediation and has not provided since. The District has been extremely mindful of *not* soliciting GWI employees, and left GWI employees to decide whether to leave GWI for VISPO according to their own free will and personal judgment. *See Verified Amended Complaint* at ¶ 32.

---

[1] Specifically, Paragraph 38 of the Complaint contends that District and VISPO personnel accessed the District's own premises under express permission from this Court "in order to solicit" GWI employees, (Verif. Compl. ¶ 38), but does not attempt to support how GWI's witness could have personal knowledge of the intentions held by third parties. The person through whom GWI purports to present this sworn evidence cannot have personal knowledge of the events described in Paragraphs 38–41, because they were not present for any of the events described in those paragraphs. (AFF). GWI's purported witness goes on to claim without evidence "that VISPO ha[s] poached other GWI employees but delayed their start dates in order to conceal their hires from GWI," (Verif. Compl. ¶ 45); that the District and VISPO have wrongfully "recruited" other parties. (*id.* ¶¶ 46); falsely implies that District representatives have testified to being aware of anti-competitive agreements with GWI employees (*id.* ¶ 57) and have testified to "actively taking steps to recruit" GWI employees (*id.* ¶ 77); and claims without evidence that the District and VISPO have interfered with GWI's employees. (*Id.* ¶ 69). These troubling and baseless assertions stand for no evidence at all, and GWI's Motion consequently fails.

[2] The Klinck Non-Compete clearly allows GWI to send the Non-Compete to VISPO. (ECF No. 2-1 at p. 6).

## II.     GWI's unsupported allegations conflict with established facts.

GWI protests that it was robbed of the opportunity to negotiate a more desirable contract than the one it voluntarily assumed in January of 2023, when the District finally declined to strike a new agreement with GWI in February of 2025. (Mot. at 2) (citing Verified Complaint ¶¶ 20–25). To the contrary, GWI had the opportunity, pursued it, and merely failed to negotiate mutually acceptable terms. (*Aff. of F. X. Flinn in Support of ECVTD's Mot. for Prelim. Injunction* ("Flinn Aff.") ¶¶ 50–64, *Biddeford et al v. Flinn et al,* Dkt. No. 2:25-CV-354-mkl ("Related Action") ECF No. 28-1) (describing negotiations between GWI and the District in November and December of 2024 and January of 2025), *see also* (February 19, 2025 Letter to Attorney O'Brien attached as **Exhibit 1**).

GWI's Motion emphasizes the alleged "substantial training" (Mot. at 8) received by its employees as a justification for its request to the Court to prevent GWI employees from offering their talents to the workforce as they see fit, but in support offers only conclusions. *See* (*id.* at 8, 11, 12, 14). GWI claims that it was GWI's own training that caused the affected employees to be "highly trained subject-matter experts." *See, e.g.*, (Mot. at 8). GWI claims Defendant Klinck received "literally hundreds of hours of training, mentoring, and design advice" (*id.*), yet offers the Court no facts that prove or even tend to show the investments it claims or contextualize them in the careers of the people it seeks to control. GWI thus appears to attempt to take sole credit for expertise which, as is often the case, is gradually cultivated throughout the arc of a person's career. That is not the case. When GWI stepped into the role it now serves for the District, as part of assuming ValleyNet's position and its Operating Agreement with the District, GWI enjoyed a workforce windfall. GWI received the benefit of a prepackaged highly skilled workforce ready to continue operating the District's network for GWI just as they had been; as part of stepping into ValleyNet's shoes, GWI's

workforce received numerous highly skilled and trained employees formerly of ValleyNet none of whom needed to be recruited, hired, or trained.[3]

Not only does GWI fail to present any facts that offer support for its conspiracy-minded theory of parties "raiding" its workforce, but what exists in the record points to the opposite conclusion: that the District and VISPO have actively steered clear of any direct communication with GWI employees, and have only recruited VISPO employees by placing job listings on VISPO's own website—a passive communication no more targeted at GWI's employees than it is targeted at any resident of Vermont, New England, or the country. (*Verif. Compl.* ¶ 30) (describing District documents dated April 8, 2025 stating "individuals currently staffing the District's business are employees of GWI, and neither the District nor VISPO has any control over their choice of employment . . . . District representatives *must not engage in any recruitment efforts toward the GWI employees*"). GWI has offered nothing but conjecture that any third party is to blame for its employees' desire to leave.

**III.    GWI misled employees into the alleged agreements not to protect any legitimate business interest, but rather to attack the District and VISPO *after* the District declined to strike a new agreement with GWI.**

The District finalized its decision to move to a different operator after the expiration of the current Operating Agreement with GWI in February 2025, after concluding that each of GWI's proposals were not acceptable. *See* (**Ex. 1);** (Flinn Aff. ¶¶ 50–64, Related Action ECF No. 28-1). GWI should have known that its prospects for a renewed contract were in substantial jeopardy on February 11, 2025. A copy of the District's February 11, 2025 Governing Board Meeting Minutes is attached as **Exhibit 2**. At that meeting, Mr. Flinn raised issues which were further developed in

---

[3] (Related Action, July 29, 2025 Hr'g Tr. 95:3–96:13) (testifying that as part of the transition from ValleyNet to GWI as the District's operator, "ValleyNet negotiated with GWI to accept virtually every ValleyNet employee as a GWI employee . . . . [W]e viewed that as a benefit to transitioning to GWI as opposed to another operator that might have displaced some of the ValleyNet employees who we had hired over the prior ten years . . . ."). Excerpts attached hereto as **Exhibit 6**.

counsel's February 12, 2025 Letter to Evan O'Brien demanding that GWI cease and desist from unauthorized reorganization of ECFiber staff. A copy of that letter is attached as **Exhibit 3**. GWI did not take this as an opportunity to be transparent with the District, but apparently began contemplating business and legal tactics it could employ against the District, perhaps to force the District to agree to terms it had previously rejected in a new agreement. GWI became conclusively aware of the District's decision to remove it from consideration for the upcoming operating agreement because the District conveyed that fact in a letter dated February 19, 2025. (*Id.*), *see also* (Verif. Compl. ¶ 25) (stating that GWI knew of the District's intent not to renew with GWI on February 19, 2025).[4] Within a week, GWI initiated the first of the many lawsuits it would file related to its failure to strike mutually agreeable terms with the District in a new contract. *See* (Civil Complaint, *Biddeford Internet Corp. d/b/a Great Works Internet, GWI Vermont, LLC v. F.X. Flinn*, 25-CV-00823 (Vt. Super. Ct. Windsor Cnty., Feb. 24, 2025)). While the District attempted to extend one of several olive branches and explore a negotiated resolution with GWI, GWI was apparently actively engaged in causing the ECFiber Staff to sign non-competes. A copy of the March 11, 2025 Governing Board Meeting Minutes (reflecting negotiations) is attached as **Exhibit 4**. Any extension of the existing Operating Agreement, or any new agreement with GWI was fully removed from consideration by unanimous vote of the District's Governing Board on April 8, 2025. A copy of the Governing Board's April 8, 2025 meeting minutes is attached as **Exhibit 5**.

GWI states Defendants Klinck and Oberholzer entered into the non-compete agreements it asserts in this action around March 18, 2025. (Verif. Compl. ¶¶ 50, 60) while GWI was ostensibly in good faith negotiations with the District. At the time GWI was presenting the employee Defendants with restrictive agreements in exchange for continued employment, it knew that it only would serve

---

[4] See also Declaration of Kerem Durdag at ¶ 12 (Related Action, ECF No. 31-2).

as the District's contract operator for a few months; the representation that its employees would receive any job security in return for executing the agreements at issue here reflected a false premise. *See Defendants Klinck and Oberholzer's Opposition to GWI Motion for Preliminary Injunction.* Thus, there would appear to be a substantial likelihood that the agreements GWI seeks to enforce were offered under materially misleading circumstances.

## ARGUMENT

### I.     GWI's Motion fails to demonstrate likelihood of irreparable harm.

"The irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction and therefore must be satisfied before the other requirements for an injunction can be considered." *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 107 (2d Cir. 2025) (internal quotation marks and citation omitted). "To establish irreparable harm, the moving party must show an 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *Id.* (quoting *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020)). "Monetary compensation need only be 'adequate' for preliminary relief to be unwarranted, not perfect. *Id.* (quoting *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 358 (2d Cir. 2024)).

Language in a contract "do[es] not control the question [of] whether preliminary injunctive relief is appropriate." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 674 (2d Cir. 2023) (quoting *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987)). It is well-settled that "contractual language declaring money damages inadequate in the event of a breach *does not control the question*" of irreparable harm and the appropriateness of injunctive relief. *Baker's Aid*, 830 F.2d at 16 (emphasis added), *see also Dominion Video Sat., Inc. v. Echostar Sat. Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004) (observing that courts "characteristically hold" that contractual statements "alone are insufficient to support a finding of irreparable harm and an award of injunctive relief").

GWI does not provide an explanation of how it is likely to be irreparably harmed if injunctive relief does not issue, and its Motion fails as a result. GWI appears not to distinguish between the possibility of some theoretical future harm and actual, imminent, and *irreparable* harm. It is only the loss of significant and difficult-to-quantify interests that can provide the basis for courts to find a likelihood of irreparable harm in noncompete cases. *JTH Tax, LLC*, 62 F.4th at 673 (explaining the nuanced assessment of whether non-compete and non-solicitation covenants describe interests which are redressable by money damages).

Yet here, GWI fails to identify any interest that is imminently and irreparably harmed by any conduct GWI speculates the Defendants *may* do in the future.[5] Nothing about the Motion tends to show that Defendants Klinck and Oberholzer carry with them or benefit from any special goodwill or client relationships attributable to GWI: Defendants are not executives or managers responsible for GWI's relationships with its customers. Even to assume that the Defendants did wield some of GWI's goodwill with its *other* customers, that harm would be mitigated by restricting contact with those other customers, not by restricting the Defendants from continuing to work in their chosen field and in their community operating the District's network as they have done for years. For this reason, the relief GWI requests is not appropriately narrowly tailored. Clearly, nothing about GWI's allegations against Klinck and Oberholzer could possibly relate to GWI losing the District as a customer; GWI lost the District as a customer many months ago.

Merely being "entrusted," (Mot. at 13), as employees with GWI's information or training resources in the course of employment does not satisfy the arduous standard of irreparable harm:

---

[5] Indeed, GWI does not even tie its purported harm to Mr. Klinck's or Mr. Oberholzer's employment with VISPO, instead, GWI argues that harm occurs the second Mr. Klinck and Mr. Oberholzer quit working for GWI because GWI loses their expertise and skill. Defendants cannot be lawfully forced into continuing to work for GWI, and thus the harm described by GWI is not redressable.

8

> We have never held that the loss of an employee who receives training from their employer or access to proprietary information necessarily constitutes irreparable harm . . . . [c]ourts have relied on employee training in some cases, *but only when the training in question provided the departing employees the ability to unfairly compete with their former employer.*

*St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 107 (emphasis added).

GWI supposes the individual Defendants "will inevitably provide GWI's competitor an unfair advantage." (Mot. at 13). However, if the injury complained of is so remote and so speculative that GWI cannot even explain what it is and that it will occur within one year, assuming instead that it is "inevitable," (*id.*), GWI necessarily fails to carry its burden to show, as it must, an "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 106 (affirming the district court's finding that speculative claims failed to justify injunctive relief). Moreover, VISPO is not in competition with GWI by operating the ECFiber network—when its contract expires, GWI has no entitlement to the District's business. "Issuing a preliminary injunction based *only on a possibility* of irreparable harm is inconsistent with . . . characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added).

## II.     The public interest strongly disfavors an injunction.

GWI's requested injunction would substantially harm the public interest. First, the restrictions GWI attempts to impose on its current or former employees do not protect a legitimate business interest of GWI's, it only prevents employees from working for VISPO, which so long as VISPO operates only ECFiber, is not in competition with GWI. GWI's requested order does not provide any benefit to GWI, it simply seeks to damage Defendants and make a substantial portion of local talent unavailable to keep doing the same work many if not most have been doing for years—including

before GWI was even involved—operating the District's network. As the Court knows, for nearly fifteen years, the District has paid all payroll expenses incurred by first ValleyNet then GWI while operating its ECFiber network. Allowing GWI to arbitrarily exclude skilled professionals—whose experience was funded by the District—from the workforce is inequitable and would unduly jeopardize the 10,000 Vermonters the Court sought to protect in its Related Action injunction order.

Second, an injunction here cuts against the public interest because public policy favors the right of individuals to engage in desirable commercial activity—the right to put their labor and talent to its highest and best use, according to their own judgment—and only restrictions which are reasonable and justified are enforceable. "Restraints against competitive employment conflict with the public policy favoring the right of individuals to freely engage in desirable commercial activity. . . . Whenever an individual's trade or talents are restricted, we scrutinize the reasonableness and justification for such a restriction." *Fine Foods, Inc. v. Dahlin*, 147 Vt. 599, 603 (1986) (internal citation omitted).[6] The public has an interest in the free flow of commerce. *Summits 7, Inc. v. Kelly*, 178 Vt. 396, 399 (2005). Here, it is impossible to determine that the restrictions asserted by GWI, entered into while withholding material information from its employees, are reasonable and justified: GWI has failed to produce facts that justify the restrictions asserted, and its rationale for the reasonableness of restricting each of its rank-and-file employees from working for other entities is dubious in the extreme. An injunction would harm the public interest by prejudging a dispute that necessarily presents a nuanced and fact-specific inquiry, where no facts have been developed.[7]

---

[6] As the Supreme Court of Vermont explains: "When this Court is asked to enforce restrictive covenants against competitive employment, we will proceed with caution." *Fine Foods, Inc. v. Dahlin*, 147 Vt. 599, 603 (1986).

[7] *Cf. James B. Oswald Co. v. Neate*, 98 F.4th 666, 673 (6th Cir. 2024) (applying substantively similar Ohio law and cautioning that courts should keep in mind "fact-specific considerations" when they evaluate the reasonableness of noncompete restrictions "because each case must be decided on its own facts").

**III.    GWI is not likely to succeed on the merits of its tortious interference claim or its claim that the alleged non-compete agreements prevent Defendants from serving as employees of VISPO.**

GWI cannot succeed on any claim against the District for tortious interference because proof of knowledge of the subject agreement is required[8], and GWI failed to provide the contracts it alleges the District interfered with despite the authority to do so, and refused to even provide a basic list of the employees with whom it did and did not have contracts.

By its Motion, GWI seeks to prevent certain of its current and former employees from exercising those individuals' invaluable right to put their labor and talent to their highest and best use, according to their own judgment. "Restraints against competitive employment conflict with the public policy favoring the right of individuals to freely engage in desirable commercial activity." *Fine Foods, Inc. v. Dahlin*, 147 Vt. 599, 6030 (1987). GWI comes nowhere close to clearing the high bar of demonstrating that it will likely prevail on the merits of its claim to prevent Mr. Klinck and Mr. Oberholzer from working with the employer of their choice. *St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 106 ("A preliminary injunction is an extraordinary and drastic remedy and should not be *granted unless the movant, by a clear showing, carries the burden of persuasion.*") (citation and internal quotation marks omitted) (emphasis added).

Indeed, because it asks the Court to order that Mr. Klinck and Mr. Oberholzer may not work in the internet services field in in Maine, New Hampshire or Vermont for a year or longer, GWI's Motion asks for substantially all of the relief sought against Mr. Klinck and Mr. Oberholzer. This imposes the highest possible standard upon GWI's request for a preliminary injunction.

---

[8] *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 214 (W.D.N.Y. 2021) (". . . plaintiff must plead facts showing not only that defendant had knowledge of the existence of a contract, but that it had 'actual knowledge of the terms of the contract and of the contractual obligation that was allegedly breached.'")(citation omitted).

> We have held the movant to a heightened standard where . . . the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits . . . . the movant must show a "clear" or "substantial" likelihood of success on the merits . . . and make a "strong showing" of irreparable harm . . . in addition to showing that the preliminary injunction is in the public interest.

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).[9] GWI fails to meet this standard, and its Motion should be denied.

A. <u>The restrictions asserted by GWI are not reasonable and thus it is not likely to prevail on the merits of its claim to prevent Mr. Klinck and Mr. Oberholzer from serving the geographic area of the District's ECFiber network.</u>

Restricting Mr. Klinck and Mr. Oberholzer from employment in the internet services industry throughout Vermont reflects an unreasonable geographic restriction, because GWI has no business interest in serving ECFiber subscribers once VISPO is operational on January 1, 2026 because GWI's contract with the District expires on December 31, 2025. "With respect to the territory to which the restriction may apply, the rule has always been that it may be extended to the limits wherein the plaintiff's trade may be likely to go." *Dyar Sales & Mach. Co. v. Bleiler*, 106 Vt. 425, 175 A. 27, 30 (1934) (citations omitted). After January 1, 2026, GWI's trade will not be going to any location served by the ECFiber network—its trade can go everywhere else, but nowhere on the ECFiber network. Because GWI lost the opportunity for a new contract with the District in 2026, there is no overlap— nor can there be—between the subscribers served by the ECFiber network with the assistance of Mr. Klinck and Mr. Oberholzer, and the subscribers who may be served by GWI's work. As a result, a geographic restriction on Mr. Klinck and Mr. Oberholzer's work that prevents them from serving the

---

[9] *See also JTH Tax, LLC v. Agnant*, 62 F.4th 658, 672 (2d Cir 2023) (finding plaintiff failed to show entitlement to injunction enforcing alleged restriction against competition according to heightened standard); *BakeMark USA LLC v. Negron*, No. , 2024 WL 1075280, at *15–16 (S.D.N.Y. Jan 12, 2024) (same).

District's ECFiber network can have no conceivable connection to GWI's legitimate business interests, is unreasonable, and is unlikely to be recognized by Vermont law.

B. <u>GWI cannot show a clear likelihood of success on the merits of its claims because the alleged noncompete agreement does not clearly pass Vermont law's test for reasonableness.</u>

"[A] restrictive covenant 'is unreasonably in restraint of trade if (a) the restraint is greater than needed to protect the [employer's] legitimate interest, or (b) the [employer's] need is outweighed by the hardship to the [employee] and the likely injury to the public." *Sys. & Software, Inc. v. Barnes*, 2005 VT 95, ¶ 4 (2005). The restraint proposed by GWI exceeds GWI's legitimate interests.

The restraint asserted by GWI vastly exceeds the minimal interest GWI asserts in protecting its training investment. GWI claims that its employees receive the benefit of training, but ordinary training and the gaining of on-the-job experience is not a protectable business interest that justifies restraining trade and competition. "The fact that a former employee was trained by the employer is not a basis for granting an injunction enforcing a restrictive covenant." *USAchem, Inc. v. Goldstein*, 512 F.2d 163, 168 n.4 (2d Cir. 1975).[10] Generally only confidential and proprietary information that provides an appreciable, unfair advantage at the prior employer's expense is protectable under a non-competition agreement, and only particularly extensive or specialized training can relate to a protectable interest.[11] GWI has failed even to specify what training it contends is valuable and

---

[10] *See also Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 473 (Tenn. 1984) (explaining common law tradition of "general knowledge and skill appertain exclusively to the employee, even if acquired with expensive training, and thus does not constitute a protectible interest of the employer"); *Kelsey-Hayes Co. v. Maleki*, 765 F. Supp. 402, 407 (E.D. Mich. 1991), vacated on other grounds, 889 F. Supp. 1583 (E.D. Mich. 1991) (noting "whatever expertise defendant developed as a computer programmer. . . with the assistance of on-the-job instruction and published manuals, has been his alone, historically, and would not fall within the proscription of contracts protecting an employer's propriety or confidential information"); *Clark Paper & Mfg. Co. v. Stenacher*, 140 N.E. 708, 711–12 (N.Y. 1923).

[11] *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 107 (2d Cir. 2025) ("We have never held that the loss of an employee who receives any training from their

deserves protection; thus it necessarily fails to show that the training it might have provided Mr. Klinck and Mr. Oberholzer would somehow "provide[] [them] the ability to unfairly compete with their former employer." *St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 107. To make such a showing, GWI must show that the training it claims to have provided allows Defendants to unfairly compete.

The restraint asserted by GWI vastly exceeds the minimal interests GWI has shown in protecting its confidential information or customer goodwill. Indeed, GWI has identified no confidential information it claims would allow Mr. Klinck, Mr. Oberholzer, as employees of VISPO, to actually compete with GWI, *and* to do so unfairly. Separately, all information pertaining to operating the District's network belongs to the District. The body of information in which GWI has shown it has a legitimate and protectible interest—one that prevents Mr. Klinck and Mr. Oberholzer from working on the ECFiber network as VISPO employees—is as couched in conjecture as the notion that VISPO is a current competitor or *might be* a competitor at some time within the expiration of the subject non-competes, is speculative, and GWI presents no actual, imminent risk of irreparable harm to GWI.

Whether the restraints asserted by GWI are even enforceable in the first place presents a close question of Vermont law, based heavily in facts which are not before the Court and have not yet been developed. GWI cannot carry its extraordinary burden, and its Motion should be denied.

C. GWI cannot show a clear likelihood of success on the merits of its claims because there is no competition as between VISPO, the District's ECFiber network, and GWI.

GWI is not in competition with any Defendant. It is well settled that the District's ECFiber network will cease to be a customer of GWI when the parties' contract expires. The expiration of that contract has been anticipated for as many years as GWI has worked with the District.

---

employer or access to proprietary information necessarily constitutes irreparable harm."); *Vantage Tech. LLC v. Cross*, 17 S.W.3d 637, 645 (Tenn. Ct. App. 1999).

GWI's claim that VISPO competes with it merely by existing is fatally flawed. VISPO does not compete with GWI because GWI has no right to operate the ECFiber network beyond December of 2025. VISPO serving the ECFiber network after GWI's contract has expired is irrelevant to GWI's competitive posture in its market. Thus, no characteristic of Mr. Klinck and Mr. Oberholzer's employment with VISPO can affect GWI's competition for any business related to ECFiber where GWI has known for *years* that its contract with the District would conclude this coming December.

To implicate any legitimate business interest of GWI, VISPO would need to actually compete—*and* do so with an unfair advantage which Vermont law recognizes as legitimately deserving of protection despite the public interest in the free flow of commerce—with GWI for the business of third parties *other than* the District. That risk is purely speculative, and as a result, GWI's Motion should be denied. *JTH Tax*, 62 F.4th at 672 (noting that injury that is speculative, remote, or can be remedied with money is ineligible for injunctive relief).[12]

Because anti-competitive restraints on trade like the ones proposed by GWI are only enforceable to the extent that they are reasonable and justified by the legitimate business interests of the party asserting them, and GWI has no interest in the ECFiber network as a customer after its contract expires, GWI cannot have a legitimate basis in preventing Mr. Klinck and Mr. Oberholzer from working on the ECFiber network for VISPO.

---

[12] GWI's assertion that VISPO *might* compete with GWI is speculative and highlights the overreach of GWI's requested injunctive relief. Further still, VISPO is only preparing to operate the ECFiber network, and currently provides no services to the District, nor any other customer. Preparing to compete is not competition. *In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 464 (S.D.N.Y. 2017) (explaining that even when a non-competition agreement is valid, it would not serve to prohibit steps taken in preparation for future competition).

## CONCLUSION

The absence of actual and imminent threat of irreparable harm is fatal to GWI's Motion, and it should be denied. GWI additionally fails to show a legitimate business interest that is at all protected by prohibiting Defendants from working in their chosen field throughout Maine, New Hampshire and Vermont, or by serving as employees of VISPO, and thus GWI's Motion fails to show a likelihood of success on the merits. GWI's Motion should be denied.

Dated: September 26, 2025               **PRIMMER PIPER EGGLESTON & CRAMER PC**

                                            By:     */s/ Ryan Long*
                                                    Ryan M. Long
                                                    William W. Strehlow
                                                    30 Main Street, Suite 500
                                                    Burlington, VT 05402
                                                    (802) 864-0880
                                                    rlong@primmer.com
                                                    wstrehlow@primmer.com

                                                    ***Attorneys for the East Central Vermont Telecommunications District***