# EXHIBIT 6

```
 1                  UNITED STATES DISTRICT COURT
                             FOR THE
 2                       DISTRICT OF VERMONT

 3

 4    Biddeford Internet Corporation,   )
      GWI Vermont, LLC                  )
 5                                      )
      v.                                ) Case No. 2:25-cv-354
 6                                      )
      F.X. Flinn, East Central Vermont  )
 7    Telecommunications District       )
      _____)
 8

 9    RE: Motion for Preliminary Injunction (Doc. 28)

10    DATE:  July 29, 2025

11    LOCATION:  Rutland, Vermont

12    BEFORE:  Honorable Mary Kay Lanthier
                  District Judge
13

14    **APPEARANCES**:

15    Harvey J. Wolkoff, Esq.
      Quinn Emanuel Urquhart & Sullivan, LLP
16    111 Huntington Avenue, Suite 520
      Boston, MA 02199
17
      Evan J. O'Brien
18    Downs Rachlin Martin PLLC
      199 Main Street, 6th Floor
19    Burlington, VT 05401

20    Ryan M. Long, Esq.
      Primmer Piper Eggleston & Cramer, PC
21    30 Main Street, Suite 500
      PO Box 1489
22    Burlington, VT 05402-1489

23    Evan A. Foxx, Esq.
      Cooley, Cooley & Foxx, Inc.
24    125 College Street, 2nd Floor
      Burlington, VT 05401
25
```

```
 1                    INDEX OF EXAMINATION
 2    Witness              Examined By          Page        Line
 3    F.X. Flinn           Atty. Long            16          19
 4                         Atty. Wolkoff         57           9
 5
 6    Stanton Williams     Atty. Long            83           7
 7                         Atty. O'Brien         92           2
 8
 9    Thomas Cecere        Atty. Wolkoff        108          21
10                         Atty. Long           135          21
11
12
13                     INDEX OF EXHIBITS
14                                                          Page
15    Plaintiff Exhibits
16    3 - 2/12/25 ECFiber Letter (ECF 31-6)                  76
      4 - 2/19/25 ECFiber Letter (ECF 31-7)                  81
17    5 - 6/26/25 Sinala Corp Proposal (ECF 31-9)            67
      6 - 6/30/25 Sinala Corp Proposal Response             125
18       (ECF 31-9)
      10 - Screenshot of vispocompany.com/careers            68
19        (ECF 38-3)
      11 - 7/17/25 JSI Scope of Work (ECF 38-5)             126
20    20 - Excerpts of Presentation Given to                 71
          ECFiber (Feb. 24, 2025)
21
22
23
24               - Continued on Next Page -
25
```

```
 1                                                              Page

 2      Defense Exhibits

 3      A - 2/22/16 Operating Agreement and                        19
            Exhibit A
 4      B - Protocol for ValleyNet/GWI Support                     24
            Services and Collaboration Agreement
 5      C - 11/8/22 Construction Reporting                         27
            Protocol
 6      D - 11/8/22 Network Gaps and Omissions                     29
            Protocol
 7      E - 5/9/23 Installation of Network Drops                   30
        F - 3/12/24 Governing Board Meeting                        30
 8          Minutes, Amended
        G - 3/12/24 Speed Change Policy                            32
 9      H - 3/12/24 Seasonal Disconnect Policy                     33
        I - 12/31/22 Assignment and Assumption                     19
10          Agreement
        J - 4/8/25 Governing Board Meeting Minutes                 37
11      K - 4/16/25 Letter from ECVTD to GWI                       40
            Authorizing VISPO transition
12      M - 4/16/25 Email from K. Durdag to                        42
            F.X. Flinn
13      N - 5/5/25 Executive Committee Meeting                     42
            Minutes
14      O - 5/6/25 Letter from ECFiber to GWI                      43
        P - 5/13/25 Governing Board Annual Meeting                 45
15          Minutes, Amended
        Q - 5/13/25 Transition Policy                              47
16      R - 7/14/25 Open Letter to ECFiber Subscribers             50
            from GWI
17      S - 7/15/25 ECFiber Letter in Response                     51
        T - 6/13/25 FiberSmith Vision Termination Notice           52
18      U - 7/18/25 E. O'Brien Letter to FiberSmith                54
            re Termination of Vision
19      W - 3/12/24 Non-profit Discount Policy                     33

20

21

22                        *   *   *   *   *

23

24

25
```

```
 1                  (The hearing began at 9:34 a.m.)
 2                  COURTROOM DEPUTY:  Your Honor, the matter before the
 3      Court is Civil Action 25-cv-354, Biddeford Internet Corporation
 4      and GWI Vermont, LLC versus F.X. Flinn and East Central Vermont
 5      Telecommunications District.  Present on behalf of the
 6      plaintiffs are Harvey Wolkoff and Evan O'Brien.  Present on
 7      behalf of the defendants are Evan Foxx and Ryan Long.  We are
 8      here today for a hearing on the motion for preliminary
 9      injunction.
10                  THE COURT:  Good morning, everybody.
11                  ATTORNEY LONG:  Good morning, Your Honor.
12                  ATTORNEY WOLKOFF:  Good morning.
13                  THE COURT:  Are the parties ready to proceed?  Have
14      there been any efforts at avoiding the need for a hearing, or
15      are we going to go forward?
16                  ATTORNEY LONG:  The parties are ready to proceed.  I
17      don't believe there have been productive discussions.  The
18      general idea of whether this was necessary was asked, but I
19      believe it is necessary, Your Honor.  There was a discussion
20      about authenticity and admissibility of certain exhibits which
21      I'm happy to get into after the other side has had a chance.
22                  THE COURT:  Thank you.  And you are Attorney Long,
23      correct?
24                  ATTORNEY LONG:  Correct, Your Honor.
25                  THE COURT:  Okay, thank you.  I'm just trying to get
```

1  BY ATTORNEY O'BRIEN:
2  Q.   So, Mr. Williams, the transition from ValleyNet to GWI in
3  2022 or, rather, began in 2022; is that your testimony?
4  A.   Yes.  I mean, the, the policy related to GWI services, et
5  cetera, kind of documents that in that ValleyNet remained the
6  signatory of the operating agreement through the beginning of
7  2023, but we allowed GWI to begin managing day-to-day
8  businesses earlier than that for the sake of ECFiber and for
9  the sake of a smooth transition.
10 Q.   When you say "earlier than that", do you mean earlier than
11 the spring of 2022?
12 A.   No.  It was sometime around the spring of 2022.  I don't
13 remember the exact date.
14 Q.   And would you agree with me that, before the spring of
15 2022, GWI had been a subcontractor to ValleyNet?
16 A.   Yes.
17 Q.   How, and approximately how long before the spring of 2022
18 had that subcontracting relationship been in place?
19 A.   It existed from the time of the phone service changeover,
20 which I'm going to get the dates wrong, but it was
21 approximately 2020 when we switched to GWI's phone service.
22 ValleyNet also recognized that it needed help in the marketing
23 area, and we had a separate contract for that.  We negotiated
24 with GWI for help on the network management side, and we
25 negotiated with them for that, but -- well, that's fine.

1  Q.  So but the earliest, the earliest subcontract relationship
2  was the phone service -- is that right -- in 2020?
3  A.  Right.  There existed another relationship in that
4  Fletcher Kittredge, founder of GWI, sat on ValleyNet's board
5  for a number of years until he resigned to avoid a conflict of
6  interest, and that's how the initial relationship started was
7  with that board seat.
8  Q.  So, by the time of the spring to summer of 2022, there had
9  been this relationship for, is it fair to say, two years?
10 A.  At least two years, yes.
11 Q.  ValleyNet needed some assistance from GWI in the summer of
12 2022; is that right?
13 A.  Prior to that.  We didn't need it.  We elected to beef up
14 ValleyNet's capabilities by using outside contractors, one of
15 which happened to be GWI, which is common practice within the
16 industry.
17 Q.  So is it correct that, by some time after the spring of
18 2022, it became the case that there were discussions among
19 ECFiber, GWI, and ValleyNet simply for GWI to take an
20 assignment of the operating agreement from ValleyNet?
21 A.  Yes.
22 Q.  Okay.  And that, that is what occurred, correct?
23 A.  Yes.  ValleyNet advocated for GWI to become its successor
24 on the basis of our relationship prior to, you know, through
25 Fletcher's board service as well as the various subcontracts.

1   Q.   And so ValleyNet, what happened to ValleyNet's employees
2   as part of that transition during the time period that we've
3   been discussing through approximately January 1, 2023?
4   A.   ValleyNet negotiated with GWI to accept virtually every
5   ValleyNet employee as a GWI employee.  We were concerned to
6   make sure that the employees retained similar or better health
7   care, et cetera, in terms of benefits.  So we viewed that as a
8   benefit to transitioning to GWI as opposed to another operator
9   that might have displaced some of the ValleyNet employees who
10  we had all hired over the prior ten years and who, you know, I
11  still know quite a number of them.  So I wanted them to have a
12  good landing spot and with opportunity for advancement, et
13  cetera, et cetera, that might not have existed at ValleyNet.
14  Q.   And your position around the time of that transition, was
15  it CFO, or did you have other positions at that time within
16  ValleyNet?
17  A.   I was CFO.
18  Q.   And you approved of that arrangement regarding ValleyNet
19  employees being hired by GWI Vermont as part of the transition?
20  A.   We spent months discussing how to do that seamlessly, and
21  the reason the --
22  Q.   Well, sir, the question was, Did you approve that?
23  A.   Yes.
24  Q.   Who was the CEO of ValleyNet at the time?
25  A.   Carole Monroe.

```
 1    Q.   To your knowledge, if you know, did she approve it as
 2    well?
 3    A.   Yes.
 4    Q.   So Mr. Williams --
 5    A.   Hang on.  Carole Monroe was chair of the board.
 6    Q.   Sir, there's no question pending.
 7              THE COURT:  I think he's trying to correct what he
 8    had said.
 9              ATTORNEY O'BRIEN:  Oh, I'm sorry.
10              THE WITNESS:  I'm trying to correct myself.  Carole
11    Monroe was chair of the board.  I think Tom Monroe might have
12    been formally the -- I'm getting the name wrong.  Tom Cecere
13    was, I think, CEO at the time.
14    BY ATTORNEY O'BRIEN:
15    Q.   Mr. Williams, I'm just going to try get through this here.
16    Mr. Williams, you talked about Vision on your direct testimony
17    with Mr. Long.  Do you recall that, sir?
18    A.   Yes.
19    Q.   So am I correct that Vision is a legacy system that was
20    installed -- strike that.
21         ValleyNet began to use Vision when you were CFO of
22    ValleyNet; is that a fair statement?
23    A.   Yes.
24    Q.   When, approximately, if you can recall, did you, not you,
25    did ValleyNet begin using Vision?
```

1  are both parties agreeing that this is a mandatory injunction
2  that does require a greater showing of likelihood of success on
3  the merits?
4          ATTORNEY WOLKOFF:  Turning over your business is a
5  mandatory injunction.
6          ATTORNEY LONG:  I think we're in disagreement.  Our
7  side is saying that there are certain things that should be
8  done within the context of the contract, existing obligations,
9  and GWI is saying that this is something extra that they're not
10 required to do, would be in addition, in addition.
11         THE COURT:  And Mr. Wolkoff believes that turning
12 over one's property is a mandatory injunction?
13         ATTORNEY WOLKOFF:  We do, Your Honor.  But Mr. Long
14 said it, so I agree with the way he said it.  And I want to
15 say, Your Honor, we certainly appreciate your time and patience
16 and even working through lunch, so we appreciate that very
17 much.
18         THE COURT:  No.  I appreciate the parties.  Next time
19 I will know to ask more information about how much time is
20 necessary.  We didn't do that.  So I appreciate it and
21 certainly appreciate the Court's staff sticking around as well.
22 Anything further from either side?
23         ATTORNEY WOLKOFF:  No, Your Honor.  Thank you.
24         THE COURT:  Thank you.
25 (Whereupon at 2:59 p.m. the hearing was adjourned.)

```
 1
 2                    C E R T I F I C A T E
 3             I, Sunnie Donath, RMR, Official Court Reporter
 4   for the United States District Court, District of Vermont, do
 5   hereby certify that the foregoing pages are a true and accurate
 6   transcription of my stenographic notes of the hearing taken
 7   before me in the above-titled matter on July 29, 2025 to the
 8   best of my skill and ability.
 9
10
11
12
13
14            *Sunnie Donath, RMR*
              ---------------------------------
15                 Sunnie Donath, RMR
16
17
18
19
20
21
22
23
24
25
```